IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RALPH L. TAYLOR, III, Individually and as Personal Representative of the Estates of Peter Sandek, Jo Ellen Sandek, and Kyle Sandek, Deceased. | : <br> : <br> : CIVIL ACTION <br> : No. 03-221 <br> : |
| Plaintiff, | : <br> : |
| v. | : <br> : |
| MOONEY AIRCRAFT CORPORATION, et al. | : <br> : <br> : |
| Defendants. | : <br> : |

**MEMORANDUM**

**ROBERT F. KELLY, Sr. J.**                                                                   **NOVEMBER 21, 2006**

Before this Court are the Motions for Summary Judgment filed by Defendants Mooney Aircraft Company ("Mooney") and Honeywell International Inc. ("Honeywell"). For the reasons set forth below, Defendants' motions are granted in full.

**I.      BACKGROUND**

This action arises out of an airplane crash that resulted in the deaths of pilot Peter Sandek ("Peter"), his wife Jo Ellen, and their son Kyle (collectively the "Sandeks"). Geoffrey Gish, a Georgia resident appointed as representative for the estates of the decedents, filed these wrongful death and survival actions against Honeywell, Mooney, and other defendants in the Philadelphia Court of Common Pleas on November 25, 2002. His claims are based on theories sounding in strict products liability, negligence, misrepresentation, breach of warranty, and outrageous and willful conduct. Removal to this Court occurred on January 1, 2003. Ralph L. Taylor III

("Taylor"), a Georgia resident duly appointed by the Georgia Probate Court, replaced Mr. Gish as representative of the estates on November 1, 2004. Taylor voluntarily dismissed Defendant Parker Hannifin Corporation on June 30, 2006. Honeywell and Mooney moved for summary judgment as to all claims raised on behalf of the decedent's estates on September 12, 2006.

The airplane crash that killed the Sandeks occurred on November 26, 2000. After taking off from Bradford Regional Airport at 10:53 a.m., Peter radioed to the air traffic controllers that he had an emergency and needed to return. He said he had engine trouble, but did not describe his situation with any detail. Peter requested vectors back to the runway. He never put his airplane on the proper course back to the airport. Witnesses stated that they saw the aircraft fly over the airport twice, once heading north and then heading south. Air traffic controllers lost radar contact with the Sandeks aircraft at approximately 11:17 a.m. The wreckage of the airplane was later found in a wooded area 10 miles northeast of the airport.

Bradford Regional Airport is a small airport located in northwestern Pennsylvania, about 20 miles south of the New York border. The Sandeks had left their Georgia home on November 22, 2006, with the intention of flying to Olean, New York to spend the Thanksgiving holiday with family. Peter intended to land in Olean, but was required to land at Bradford due to bad weather. Snowy conditions prevented Peter from landing in Olean. He was directed to an alternate airport in Bradford. Upon landing, the Sandeks continued their journey to New York by automobile. The family remained in New York until November 26, 2000, when they drove to Pennsylvania in preparation for their return flight home to Georgia.

Peter was a licensed pilot and was certified to fly his aircraft in visual as well as instrument conditions. On November 26, 2006, weather conditions at Bradford were poor.

There was very limited visibility. Pilots were required to fly under instrument flight conditions because visual flight was impossible. In instrument flight conditions, the pilot relies exclusively on his instruments while flying the plane. Peter, recently licensed to fly in instrument conditions, filed an instrument flight plan with air traffic control, and the family commenced their flight back home to Georgia.

      Peter was piloting a Mooney M20K, registration number M252MW, which he owned and operated. The Mooney M20K is a small propeller driven airplane, capable of carrying four people. This airplane and its component parts were manufactured and assembled in 1987. Mooney originally sold this aircraft to the G.B. Dupont Co. on January 30, 1987. The airplane was equipped with a Honeywell flight control system, which included a Honeywell KI-256 Flight Command Indicator. Known as an attitude indicator, the KI-256 displays the orientation of the plane relative to the actual horizon. Pilots rely on the attitude indicator when flying under instrument flight condition. Honeywell's KI-256 was powered by vacuum pressure. Mooney, the airplane manufacturer, had installed a dry engine driven vacuum pump in this aircraft to generate the vacuum pressure needed to power the attitude indicator. Parker Hannifin, who was dismissed from this action, manufactured the vacuum pump used on this airplane. An investigation of the airplane after the crash showed that the vacuum pump on this airplane was badly worn and failed during the flight.

      The Federal Aviation Administration ("FAA") has promulgated a rule on the use of powered instruments in aircraft. In 14 C.F.R. § 23.1331, the FAA has mandated that every instrument using a power source must have a warning light to indicate when power is not adequate to sustain proper instrument performance. That rule allows for the use of integrated or

separate warning lights. An integrated warning light is one that is built right into the face of the attitude indicator, visible on the instrument itself. A separate warning light is one that is located somewhere other than on the instrument, in this case on the airplane's instrument panel. The Mooney's instrument panel was similar to that of an automobile's dashboard.

Honeywell did not include an integrated warning light in its KI-256. Mooney installed a separate warning light in compliance with the FAA regulations. The warning light for the attitude indicator was placed in the center of the aircraft's instrument panel. The light illuminated anytime that the airplane's vacuum pressure was below the level required to power the KI-256. In its Pilot's Operating Handbook, Mooney explained the importance of an illuminated warning light. The handbook explained that an illuminated light meant that vacuum pressure in the aircraft was at an unsafe level, and the information obtained from the attitude indicator was unreliable and pilots should disregard it. The handbook was included with the airplane. The FAA approved the handbook and overall design of the Mooney M20K, and certified this aircraft as airworthy.

An electric auxiliary vacuum pump was included on the aircraft in the event that the primary dry engine driven vacuum pump failed to produce the required vacuum pressure. Once the pilot was alerted by the low vacuum pressure warning light, he could engage the auxiliary pump by turning a switch mounted on the instrument panel. When using the auxiliary pump, the pilot was instructed to monitor the mechanical vacuum gauge installed in his instrument console to determine whether acceptable vacuum pressure was present in the system. This gauge showed the level of vacuum pressure in the airplane's system at all times, regardless of which pump was utilized. After the accident, the auxiliary electric pump was tested and functioned properly.

The Sandeks were domiciliaries of the State of Georgia. Ralph Taylor, the representative of the estates, is a Georgia resident. The estates of the decedents are being probated in Georgia. Peter purchased this airplane in Georgia from a Georgia corporation, GLM. That corporation has maintained and serviced the aircraft in Georgia since 1998. WHP Aviation, Inc., a Georgia company, was employed to service this aircraft. Peter also used the Epps Air Service, Inc., incorporated in Georgia, for additional maintenance after he purchased the airplane. The Sandeks made their family home in Georgia, and were returning to that home when this accident occurred.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) states that summary judgment is proper "if there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See also Hines v. Consol. Rail Corp., 926 F.2d 262, 267 (3d Cir. 1991). The Court asks "whether the evidence presents a sufficient disagreement to require submission to the jury or whether . . . one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "A fact is material if it could affect the outcome of the suit after applying the substantive law. Further, a dispute over a material fact must be 'genuine,' i.e., the evidence must be such 'that a reasonable jury could return a verdict in favor of the non-moving party.'" Compton v. Nat'l League of Prof'l Baseball Clubs, 995 F. Supp. 554, 561 n.14 (E.D. Pa. 1998).

Summary judgment must be granted "against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  Once the moving party has produced evidence in support of summary judgment, the non-moving party must go beyond the allegations set forth in its pleadings and counter with evidence that presents "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Big Apple BMW, Inc. v. BMW of N. Am. Inc., 974 F.2d 1358, 1362-63 (3d Cir. 1992).  "More than a mere scintilla of evidence in its favor" must be presented by the non-moving party in order to overcome a summary judgment motion.  Tziatzios v. United States, 164 F.R.D. 410, 411-12 (E.D. Pa. 1996). If the court determines that there is no genuine issues of material fact, then summary judgment will be granted.  Celotex, 477 U.S. at 322.

### III.   DISCUSSION

    A.   Conflict of Laws

This motion requires this Court to answer a conflict of laws question.  In a diversity of citizenship action, the Court determines which state's substantive law governs by applying the choice-of-law rules of the jurisdiction in which the district court sits, here Pennsylvania.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Petrella v. Kashlan, 826 F.2d 1340, 1343 (3d Cir. 1987); Melville v. Am. Home Assurance Co., 584 F.2d 1306, 1308 (3d Cir. 1978). In Pennsylvania's leading conflict of laws case, Griffith v. United Air Lines, Inc., 203 A.2d 796 (1964), the Pennsylvania Supreme Court abandoned the traditional rule of lex loci delicti used to resolve conflicts issues.  That rule, which said that the place of the wrong governs the substantive rights and liabilities of the parties, was replaced with "a more flexible rule which permits analysis of the policies and interests underlying the particular issue before the court." Id. at 805.

Under Pennsylvania law, our analysis must begin with a determination of the type of conflict that exists between the purported competing bodies of law before we assess the governmental interests of the jurisdictions and their contacts with the dispute. Kuchinic v. McCrory, 222 A.2d 897, 899-900 (1966). Pennsylvania's methodology combines the analysis of the Restatement (Second) with a governmental interest analysis. Melville, 584 F.2d at 1311. We begin with an "interest analysis" of the policies of all interested states and then, based on the result of that analysis, characterize the case as a true conflict, false conflict, or unprovided-for case. Budget Rent–A–Car Sys., Inc. v.Chappell, 407 F.3d 166, 169-70 (3d Cir. 2005); LeJeune v. Bliss-Salem, Inc., 85 F.3d 1069, 1071 (3d Cir. 1996).

A true conflict exists "when the governmental interests of both jurisdictions would be impaired if their laws were not applied." Lacey v. Cessna Aircraft Co., 932 F.2d 170, 187 (3d Cir. 1991). If a case presents a true conflict, Pennsylvania's choice of law rules "call for the application of the law of the state having the most significant contacts or relationships with the particular issue." In re Estate of Agostini, 457 A.2d 861, 871 (1983). A false conflict arises when "only one jurisdictions's governmental interests would be impaired by the application of the other jurisdiction's law," and in that case the law of the only interested jurisdiction applies. Lacey, 932 f.2d at 187; See, e.g., Kuchinic, 222 A.2d at 899-900. In some instances neither jurisdiction's interests would be impaired if its laws were not applied. This is the unprovided for case, and when this occurs the courts resort to the principle of lex loci delicti to supply the substantive law. See Miller v. Gray, 470 A.2d 1353 (Pa. Super. 1983).

Pennsylvania has no interests in this litigation because its relationship with this litigation is fortuitous. "Under Pennsylvania's choice of law analysis, a false conflict exists 'where the

accident is fortuitous and the state where the accident occurred has no interest in the regulatory standard at issue.'" LeJeune, 85 F.3d at 1071 (quoting Reyno v. Piper Aircraft Co., 630 F.2d 149, 170 (3d Cir. 1980)).  The Sandeks' airplane crash in Pennsylvania was fortuitous.  Therefore, this conflict is false and Georgia is the only interested jurisdiction.  Consequently, the laws of the State of Georgia must apply to these claims.

In Kuchinic v. McCrory, the Pennsylvania Supreme Court held that the state where a plane crashed had no interests in applying its laws, when the presence of that crash within the state's borders was "wholly fortuitous."  222 A.2d 897, 900 (Pa. 1966).  In that case, four friends from Pennsylvania were killed when their plane crashed in Georgia.  They were flying back to Pittsburgh after having attended a football game in Miami.  Id. at 898.  Georgia, as the site of the crash, was found not to have any interest in applying its guest statute to the claims.  That contact, without more, the court said could "under no stretch of the imagination" make Georgia a concerned jurisdiction.  Id. at 899.  In that case, the guest relationship had begun in Pennsylvania, the trip originated and was to terminate there, and all four decedents were domiciled in the Commonwealth.  Pennsylvania was held to have "the most significant interest in defining the legal consequences attaching to the relationship."  Id. at 900.  That court deemed the situation in Kuchinic "a prime example of what has been characterized as a 'false conflict.'"  Id. at 899.

Pennsylvania's situation in this action is similar to that of Georgia, the uninterested state, in Kuchinic.  Pennsylvania's only contact here is its status as the site of the plane crash.  Peter and his family were domiciled in Georgia.  Their Thanksgiving trip began and was to terminate in Georgia.  The airplane was kept and serviced in Georgia.  Pennsylvania has one other contact in this case, the airplane was hangared in the Commonwealth for about five days, however, this

contact is not very significant. The airplane's presence at Bradford was fortuitous. Peter landed there only because of bad weather. Most importantly, the Sandeks were domiciled in Georgia, and the Pennsylvania Supreme Court emphasized the importance of domicile in Kuchinic, 222 A.2d at 900, over all other contacts, including the place of the airplane crash.

Pennsylvania's conflict of laws rules require that we apply Georgia law to this action. Georgia is the only jurisdiction with an interest in this litigation. The Sandeks were domiciled in Georgia, and under the standard set forth in Kuchinic, Pennsylvania has no interest in this action since its status as the site of the injury was wholly fortuitous. Applying Pennsylvania's laws would impair Georgia's interests, even though Pennsylvania has no interests implicated by these claims. Application of Georgia law does not disadvantage Pennsylvania. The Court has been presented with a false conflict of laws, and therefore must apply the law of the only interested jurisdiction. Consequently, these claims are governed by the laws of Georgia and as such that state's ten-year statute of repose applies. See Ga. Code Ann. § 51-1-11 (2006). Summary judgment is granted for Honeywell and Mooney on all claims for the reasons set forth below.

      B.      <u>Application of Georgia's Statute of Repose</u>

            1.      Strict products liability claims

All claims against Honeywell and Mooney sounding in strict products liability are barred under Georgia law. Georgia has adopted a ten-year statute of repose that says that "[n]o action shall be commenced pursuant to this subsection with respect to an injury after ten years from the date of first sale for use or consumption of the personal property causing or otherwise bringing about the injury." Ga. Code Ann. § 51-1-11(b)(2). Under Georgia law, "strict liability actions filed more than ten years after the 'date of the first sale for use or consumption of' the product

are completely barred." Chrysler Corp. v Batten, 450 S.E.2d 208, 212 (Ga. 1994) (citation omitted). No distinction is made in the statute between Georgian and non-Georgian manufacturers. See In re Air Disaster at Ramstein Air Base, Germany, 81 F.3d 570 (5th Cir. 1996); Buckhout v. Lockheed Martin Corp., No. 97-56230, 1999 U.S. App. LEXIS 6314 (9th Cir. Apr. 2, 1999); Moore v. Positive Safety Mfg. Co., No. 96-0352, 1998 U.S. Dist. LEXIS 8659 (N.D. Ga. May 26, 1998).

Mooney manufactured this airplane in 1987, and on January 30th of that year, the G.B. Dupont Co. assumed ownership from Mooney. As originally sold, the aircraft was equipped with a Honeywell KFC 150 Flight Control System. The flight control system utilized Honeywell's KI-256 Flight Command Indicator (attitude indicator). That original instrument remained in the airplane until November 26, 2000, when the aircraft crashed. This litigation commenced on November 15, 2002. Almost fifteen years elapsed between the first sale of this aircraft and the injury incurred by the Plaintiff's decedents. Consequently, because the elapsed time is longer than that allowed under Georgia law, all claims against Defendants Mooney and Honeywell sounding in strict liability are dismissed as a matter of law.

      2.    Willful, reckless, or wanton conduct claims

All claims against Mooney and Honeywell for willful, reckless, or wanton conduct are dismissed, because no evidence has been presented showing the conduct necessary to impose punitive damages. Under Georgia law, "[p]unitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." Ga. Code Ann.

§ 51-12-5.1(b).  The Georgia statute of repose does not apply to these claims because an exception exists for actions "arising out of conduct which manifests a willful, reckless, or wanton disregard for life or property."  Ga. Code Ann. § 51-1-11(c).

The imposition of punitive damages requires that the plaintiff show "circumstances of aggravation or outrage, such as spite or malice, or fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that the conduct may be called wanton or willful."  <u>Lewis v. Suttles Truck Leasing, Inc.</u>, 869 F. Supp. 947 (S.D. Ga. 1994).  Under Georgia law, "mere negligence is not enough, even though it is so extreme in degree as to be characterized as gross," to impose punitive damages on a defendant.  <u>Welch v. Gen. Motors Corp.</u>, 949 F. Supp. 843, 844 (N.D. Ga. 1996).  Additionally, the Georgia Supreme Court has held that "compliance [with regulations] . . . tend[s] to show that there is no clear and convincing evidence of" behavior justifying the imposition of punitive damages.  <u>Stone Man Inc. v. Green</u>, 435 S.E.2d 205, 206 (Ga. 1993).

Mooney complied with all applicable regulations, and in the absence of other evidence evincing willful or wanton conduct, summary judgment must be granted for Defendant.  Under FAA airworthiness standards, every instrument in an aircraft that uses a power supply must comply with 14 C.F.R. § 23.1331.  That regulation states that:

> Each instrument must have an integral visual power annunciator or separate power indicator to indicate when power is not adequate to sustain proper instrument performance.  If a separate indicator is used, it must be located so that the pilot using the instruments can monitor the indicator with minimum head and eye movement.

Mooney complied with this regulation by installing an annunciator light in the instrument panel of this airplane which alerted the pilot when power supply to the KI-256 was insufficient.  The

FAA approved of the overall design of the Mooney 252K, and specifically issued an airworthiness certificate for the specific plane that the Sandeks were flying in when they crashed.

Taylor has not produced any evidence showing that punitive damages should be imposed in spite of Mooney's compliance with the FAA regulations. Compliance with the regulations will not prevent the imposition of punitive damages if other evidence is presented showing culpable behavior. Welch, 949 F. Supp. at 844. Donald Sommer, an expert for the Plaintiff, has opined that the dry air pump used by Mooney was an inherently dangerous design and prone to continual premature failure. He stated that Mooney knew or should have known of the dangerous qualities of those pumps and should not have used dry vacuum pumps in their products. However, Mr. Sommer also testified that the predominant pump type used in new aircraft construction is the dry vacuum pump. He said manufacturers typically use dry vacuum pumps as original equipment and have done so for quite a long time. Mr. Sommer testified that this dry vacuum pump design has been used in the aviation industry for 30 years.

This evidence does not demonstrate conduct by Mooney that shows willful, reckless, or wanton disregard for life. Using a vacuum pump that a majority in the industry use is not clear and convincing evidence that Mooney acted with spite or malice. Building an airplane with a product that has been available for three decades, in an industry that is heavily scrutinized by a federal agency, cannot be reasonably considered to be an action in conscious or deliberate disregard of the safety of others. Moreover, the facts that the FAA scrutinizes airplane builders and that the FAA approved the Mooney 252K design, using a dry vacuum pump, appear more likely to demonstrate that Mooney did not act in a manner justifying the imposition of punitive damages.

Taylor has not produced any evidence establishing willful, reckless, or wanton conduct on the part of Honeywell either. Georgia courts have held that willful conduct requires an actual intention to do harm or inflict injury, and that wanton conduct is that which is so reckless or so charged with indifference to the consequences that it is the equivalent to actual intent. Vickery v. Waste Mgmt. of Ga., Inc., 549 S.E.2d 482, 484 (Ga. App. 2001). Taylor claims that punitive damages are justified here because the design of Honeywell's instrument did not include a warning light to notify the pilot of when power ceased to that instrument. Under 14 C.F.R. § 23.1331, all instruments using a power source must have either an integrated visual power annunciator or a separate annunciator. The evidence shows that any aircraft builder, utilizing the Honeywell KI-256 Flight Command Indicator, would have to install a separate warning light to be certified as airworthy by the FAA. Honeywell cannot be shown to have acted with indifference to consequences by not incorporating an integral warning light, because under FAA regulations if the instrument did not include a warning light the airplane manufacturer was required to install a separate one.

   3.  Negligent manufacture and design claims

All claims against Honeywell and Mooney sounding in negligent manufacture and design are barred under the Georgia statute of repose. As stated above, all actions in strict products liability are barred after ten years in Georgia. Ga. Code Ann. § 51-1-11(b). The Georgia legislature has extended the statute of repose to cover actions "claiming negligence of a manufacturer as the basis of liability." Ga. Code Ann. § 51-1-11(c). As was discussed above, the airplane and its component instruments were first sold in 1987. This accident did not occur until 2000, and this litigation was not brought until 2002. More than ten years passed between

the first sale of this Mooney airplane and the Honeywell instrument included therein and the accident which forms the basis of this dispute.  Consequently, Taylor is barred from bringing negligence actions against Honeywell and Mooney as a matter of law.

### 4. Negligent failure to warn claims

Taylor has not established claims against Honeywell or Mooney for negligence in failing to warn purchasers of this airplane and its accompanying instruments of the dangers associated with using dry vacuum pumps like the ones made by Parker Hannifin.  Negligent failure to warn claims are not barred under Georgia's statute of repose.  The statute states that "[n]othing contained in [subsection (c)] shall relieve a manufacturer from the duty to warn of a danger arising from use of a product once that danger becomes known to the manufacturer." Ga. Code Ann. §51-1-11(c).  "With this language the legislature carefully excluded failure-to-warn causes of action from the statute of repose, thereby applying the statute only to those causes of action arising out of the sale of a defective product." Chrysler Corp., 450 S.E.2d at 213.  "In failure to warn cases, the duty to warn arises whenever the manufacturer knows or reasonably should know of the danger arising from the use of its product." Id. at 211.  A manufacturer's duty to warn can be "based on knowledge acquired after the product is sold." Deloach v. Rovema Corp., 527 S.E.2d 882, 883 (Ga. Ct. App. 2000).  But, "[a] manufacturer is under no duty to warn of a product-connected danger which is obvious or generally known." Daniels v. Bucyrus-Erie Corp., 516 S.E.2d 848, 850 (Ga. Ct. App. 1999).

Honeywell had no duty to warn pilots of the obvious danger that its powered instrument would no longer work once the power source was removed.  To prevail on a claim for failure to warn, Taylor must show that Honeywell had a duty to warn, it breached that duty, and its breach

was the proximate cause of the decedent's injuries.  See Powell Duffryn Terminals, Inc. v. Calgon Carbon Corp., 4 F. Supp. 2d 1198, 1203 (S.D. Ga. 1998).  Manufacturers are not under a duty to warn of open and obvious dangers.  See id.  It was obvious that the KI-256 would no longer provide accurate information once vacuum power was removed.  Honeywell had no duty to warn of this obvious danger, and consequently no discussion of breach or proximate cause is necessary in regards to this Defendant[1].

Mooney has not been shown to have breached its duty to warn purchasers of its aircraft of the danger of a failure in the airplane's vacuum system.  Taylor must show not only that Mooney had a duty, but that it breached that duty and that breach was the proximate cause of the accident.  See Powell, 4 F. Supp. 2d at 1203.  Under Georgia law Mooney has a "duty to warn of a danger arising from use of a product once that danger becomes known to the manufacturer."  Ga. Code Ann. §51-1-11(c).  Plaintiff's expert, Mr. Sommer, stated in his deposition that the aviation industry has known about failures occurring in dry engine driven vacuum pumps for years.  He also testified that the attitude indicator is the most crucial instrument that a pilot uses when flying under instrument conditions.  The evidence shows that Mooney was aware that a failure in the vacuum system would effect the instruments powered by vacuum pressure, and therefore they had a duty to warn against those dangers.

---

[1] Taylor's argument is more closely akin to that of a design defect rather than a failure to warn. He asserts that Mooney and Honeywell failed to warn consumers of the dangers associated with using dry engine vacuum pumps. Honeywell is implicated because they designed the KI-256 instrument without an integrated warning light. Taylor provides testimony that states that people in the aviation industry have known of the dangers with these pumps for years. However, Taylor does not show how knowledge of this danger imposes a duty on Honeywell. The duty to warn applies to suppliers and manufacturers. See Ford Motor Co. v. Stubblefield, 319 S.E.2d 470 (Ga. Ct. App. 1984); Pepper v. Selig Chem. Ind., 288 S.E.2d 693 (Ga. Ct. App. 1982). Honeywell did not sell or manufacture the vacuum pump at issue. They did not incorporate the pump into anything they did sell. Taylor's claim that Honeywell had a duty to warn consumers of the dangers of using Parker Hannifin dry vacuum pumps has no merit.

Taylor has not presented evidence showing that Mooney breached this duty. The evidence shows that Mooney warned against the danger of a vacuum system failure, and also provided instructions for the safe use of its product. Under the Restatement (Second) of Torts, § 388, one who supplies a product directly or through a third party has a duty to give adequate warnings of any risk involved. The evidence shows that Mooney supplied the necessary warnings. Mooney included a warning light on the instrument panel of this aircraft that indicated when vacuum pressure was high or low. This warning light complied with FAA regulations. See 14 C.F.R. § 23.1331. Mooney also included a Pilot Operating Handbook and FAA Approved Flight Manual which explicitly warned pilots not to rely on the attitude indicator when the vacuum system failed. The handbook stated the following: "When either a steady or flashing VAC [vacuum] light is illuminated, the information obtained from the attitude and directional gyros is unreliable. Vacuum system should be checked and/or adjusted as soon as possible." (Def. Honeywell's Mem. Supp. Summ. J. Ex. I). Mooney also provided pilots with specific instructions on emergency procedures to follow in the event that the vacuum system failed. In a supplement to the Pilot Operating Handbook, pilots were instructed to engage the standby electric vacuum pump whenever the vacuum annunciator light was illuminated. (Def. Honeywell's Mem. Supp. Summ. J. Ex. J). Pilots were told to monitor the vacuum pressure with the mechanical vacuum gauge that was installed in the instrument panel whenever the standby system was being used. (Id.).

Taylor relies on the testimony of Donald Sommer as support for the allegation that Mooney failed to warn Peter against the dangers in the plane's vacuum system. Mr. Sommer testimony states that Peter only called in the emergency because he was warned of a vacuum

16

system failure by the annunciator light Mooney installed on the instrument panel.  His opinions seem to establish that Mooney provided sufficient warnings about the dangers of a vacuum failure, not that Mooney failed to give adequate warnings.  Taylor has not presented evidence that shows that a genuine issue exists concerning whether Mooney breached its duty to warn, and as such Mooney is entitled to summary judgment on this claim.  No discussion of proximate cause is required in regards to the claim for failure to warn against Mooney because no evidence has been presented showing that a genuine issue exists with respect to whether Mooney breached its duty to warn.

        5.        Misrepresentation claims

Honeywell and Mooney are entitled to summary judgment on the misrepresentation claims because Taylor has not presented anything beyond the pleadings to show that there is a genuine issue requiring a trial.  Once the moving party has produced evidence in support of summary judgment, the non-moving party must go beyond the allegations set forth in its pleadings and counter with evidence that presents "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  Taylor has not addressed this claim in either of his briefs.  Under Georgia law, a claim sounding in misrepresentation requires that the plaintiff show that the defendant made a willful misrepresentation to the plaintiff which the plaintiff relies on to his detriment.  See Ga. Code Ann. § 51-6-2 (2006); Powell Duffryn Terminals, Inc., 4 F. Supp. 2d at 1205.  Taylor alleges misrepresentations in his pleadings, but he presents neither specific facts about the false statements made by Honeywell or Mooney, nor specific facts about how Peter relied on those false statements to his detriment.  Since Taylor has presented nothing outside of the pleadings on this issue, Mooney and Honeywell are entitled to judgment as a matter of law.

6.     Breach of warranty claims

Honeywell and Mooney are entitled to summary judgment on Plaintiff's breach of warranty claims. Georgia law bars breach of warranty claims when the parties are not in privity with respect to the contract. Ga. Code Ann. § 51-1-11. "If a defendant is not the seller to the plaintiff-purchaser, the plaintiff as the ultimate purchaser cannot recover on the implied or express warranty." Gowen v. Cady, 376 S.E.2d 390, 393 (Ga. Ct. App. 1988). In that case a women was barred from suing a medical equipment manufacturer because the manufacturer had sold the item to a hospital, not her. Here Honeywell sold the item to Mooney, and Mooney sold the airplane to the G.B. Dupont Co., not to Peter or Taylor. As Taylor has presented no evidence that Peter was in privity with either Honeywell or Mooney, and privity is a requirement for breach of warranty in Georgia, the claims against Honeywell and Mooney must be dismissed.

Therefore, summary judgment is granted for Honeywell and Mooney and against Taylor on all claims. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RALPH L. TAYLOR, III, Individually and as Personal Representative of the Estates of Peter Sandek, Jo Ellen Sandek, and Kyle Sandek, Deceased.  :  <br><br>Plaintiff,  :<br><br>v.  :<br><br>MOONEY AIRCRAFT CORPORATION, et al.  :<br><br>Defendants.  : | CIVIL ACTION<br>No. 03-221 |

## **ORDER**

**AND NOW**, this 21st day of November, 2006, upon consideration of the Motions for Summary Judgment filed by Defendant Mooney and Defendant Honeywell pursuant to Rule 56 of the F.R.C.P. (Doc. Nos. 105, 107) and Plaintiff's responses thereto, it is hereby **ORDERED** that Defendant's **MOTIONS** on all claims are **GRANTED**.

BY THE COURT:

/s/ Robert F. Kelly
ROBERT F. KELLY,      Sr. J.